Docket No. 12-17393

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

LAMONT JOHNSON,

*Plaintiff-Appellant*,

*vs*.

WACHOVIA BANK, FSB, *et al.*,

*Defendants-Appellees*.

APPEAL FROM JUDGMENT OF THE
UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA (SACRAMENTO)
Case No. 2:10-CV-02839-GEB-CKD
HON. GARLAND E. BURRELL, JR., SENIOR U.S. DISTRICT JUDGE

## APPELLEE WELLS FARGO'S ANSWERING BRIEF

Robert Collings Little, Esq., California State Bar No. 182396
Robin C. Campbell, Esq., California State Bar No. 70734
ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP
199 South Los Robles Avenue, Suite 600
Pasadena, California 91101-2459
(626) 535-1900 | F: (626) 577-7764 | E-Mail: rlittle@afrct.com

*Appellate Counsel for Defendant and Appellee*
WELLS FARGO BANK, N.A.,
successor to by merger with Wells Fargo Bank Southwest, N.A.,
formerly known as Wachovia Mortgage, FSB,
formerly known as World Savings Bank, FSB
*[erroneously named and sued herein as "Wachovia Bank FSB,"*
*"Wachovia Mortgage Corp," and "Wells Fargo Central Bank"]*

Docket No. 12-17393

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

---

LAMONT JOHNSON,

*Plaintiff-Appellant*,

*vs*.

WACHOVIA BANK, FSB, *et al.*,

*Defendants-Appellees.*

---

APPEAL FROM JUDGMENT OF THE
UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA (SACRAMENTO)
Case No. 2:10-CV-02839-GEB-CKD
HON. GARLAND E. BURRELL, JR., SENIOR U.S. DISTRICT JUDGE

---

## APPELLEE WELLS FARGO'S ANSWERING BRIEF

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant and Appellee Wells Fargo Bank, N.A., successor to by merger with Wells Fargo Bank Southwest, N.A., formerly known as Wachovia Mortgage, FSB, formerly known as World Savings Bank, FSB, erroneously named and sued herein as "Wachovia Bank FSB," "Wachovia Mortgage Corp," and "Wells Fargo Central Bank" (Wells Fargo), identifies WFC Holdings Corporation, Greater Bay Bancorp, Placer Sierra Bancshares, Century Bancshares, Inc., Charter Holdings, Inc., and IBID, Inc. as parent corporations, and it also identifies Wells Fargo & Company (NYSE:WFC) as a parent corporation and a publicly held corporation that owns 10% or more of its stock.

Respectfully submitted,

Dated:  June 28, 2013

ANGLIN FLEWELLING RASMUSSEN
CAMPBELL & TRYTTEN LLP

By:   s/ *Robert C. Little*
Robert Collings Little

*Attorneys for Defendant and Appellee*
WELLS FARGO BANK, N.A.,
successor to by merger with
Wells Fargo Bank Southwest, N.A.,
formerly known as Wachovia Mortgage, FSB,
formerly known as World Savings Bank, FSB
*[erroneously named and sued herein as
"Wachovia Bank FSB," "Wachovia Mortgage
Corp," and "Wells Fargo Central Bank"]*

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ....................................................*ante*

TABLE OF CONTENTS............................................................................ i

TABLE OF AUTHORITIES ................................................................... iii

I.      INTRODUCTION ........................................................................1

II.     JURISDICTIONAL STATEMENT ................................................6

III.    STATEMENT OF ISSUES PRESENTED FOR REVIEW..........................7

      A.      The Truth in Lending Act (TILA) provides a one-year statute of limitations for damages claims, and a three-year statute of limitations for claims of rescission.  Johnson's four loans originated between March 2005 and September 2006.  He filed suit 3 years, 7 months later in May 2010, seeking damages and rescission under TILA.  Are his claims barred by TILA's limitations period?.................................................................7

      B.      Johnson's various state law claims challenged loan disclosures, marketing and advertising practices, loan origination and processing, and terms of credit by a federal savings bank.  Did the district court correctly find that the Home Owners' Loan Act (HOLA), as applied, preempted these state law claims? .....................7

      C.      The district court concluded that Johnson's proposed second amended complaint did not cure the deficiencies evident in the first amended complaint, and that further amendment would be futile.  Did the district court abuse its discretion in reaching this conclusion?.................................................................8

IV.     STATEMENT OF FACTS ............................................................8

V.      STATEMENT OF THE CASE .....................................................13

VI.     STANDARD OF REVIEW .........................................................18

VII.    SUMMARY OF ARGUMENT.....................................................19

i

VIII.  LEGAL ANALYSIS AND ARGUMENT ...................................................20

    A.    Johnson's claims suffered from profound and incurable statute of limitations problems. ...........................................................20

          1.    All of Johnson's TILA claims were manifestly time-barred................................................................................20

          2.    Johnson's UCL claim based on an alleged TILA violation was similarly barred by TILA's statutes of limitations. ...........22

          3.    Any claim involving the origination of Johnson's loans also suffers from statute of limitations issues...........................24

    B.    Johnson's state law claims challenge loan disclosures, marketing and advertising practices, loan origination and processing, and terms of credit by a federal savings bank.  The district court correctly determined that these claims are subject to federal preemption by HOLA.........................................................26

    C.    The district court properly exercised its discretion in determining that further amendment would be futile after it analyzed Johnson's proposed second amended complaint. ................................33

    D.    Johnson has presented neither argument nor analysis that meaningfully disputes the district court's order.................................39

IX.  CONCLUSION................................................................................43

CERTIFICATE OF COMPLIANCE.......................................................44

STATEMENT OF RELATED CASES ....................................................45

ADDENDUM

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Acosta-Huerta v. Estelle*,
　7 F.3d 139 (9th Cir.1992) ...........................................................22, 40

*Ahmad v. World Savings Bank*,
　No. CIV S-09-520 GEB KJM PS, 2009 U.S. Dist. LEXIS 45210
　(E.D. Cal. May 29, 2009)....................................................................30

*Andrade v. Wachovia Mortgage*,
　No. 09 CV 0377 JM, 2009 U.S. Dist. LEXIS 34872
　(S.D. Cal. Apr. 21, 2009)....................................................................29

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)............................................................................19

*Auer v. Robbins*,
　519 U.S. 452 (1997)............................................................................28

*Baghdasarian v. SRT Partners, LLC (In re Baghdasarian)*,
　No. CC-11-1568-KiDH, 2012 Bankr. LEXIS 5806
　(B.A.P. 9th Cir. Dec. 14, 2012) ...........................................................6

*Balam-Chuc v. Mukasey*,
　547 F.3d 1044 (9th Cir. 2008) ...........................................................21

*Bassiri v. Xerox Corp.*,
　463 F.3d 927 (9th Cir. 2006) .............................................................28

*Beach v. Ocwen Fed. Bank*,
　523 U.S. 410 (1998)............................................................................20

*Bell Atlantic Corp. v. Twombly*,
　550 U.S. 544 (2007)............................................................................19

*Biggins v. Wells Fargo & Co.*,
　266 F.R.D. (N.D. Cal. 2009)..................................................................4

*Brownfield v. City of Yakima*,
    612 F.3d 1140 (9th Cir. 2010) ............................................................42

*Buick v. World Sav. Bank*,
    637 F. Supp. 2d 765 (E.D. Cal. 2008) ................................................32

*Canyon County v. Syngenta Seeds, Inc.*,
    519 F.3d 969 (9th Cir. 2008) .............................................................18

*Carnero v. Weaver*,
    No. 09-1995, 2009 U.S. Dist. LEXIS 117957 (N.D. Cal. Dec. 18, 2009) .........32

*Castaneda v. Saxon Mortgage Servs., Inc.*,
    687 F.Supp.2d 1191. (E.D. Cal. 2009) ..............................................23

*Cazares v. Household Fin. Corp.*,
    Nos. CV 04-6887 DSF (SSx) & CV 04-2548 DSF (SSx), 2005 U.S.
    Dist. LEXIS 39222 (C.D. Cal. July 26, 2005)......................................4

*Chang v. Baxter Healthcare Corp.*,
    599 F.3d 728 ....................................................................................21

*Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu*,
    626 F.3d (9th Cir. 2010) ..............................................................39, 42

*Colony Cove Props., LLC v. City of Carson*,
    640 F.3d 948 (9th Cir. 2011) .............................................................19

*Conder v. Home Sav. of Am.*,
    680 F. Supp. 2d 1168 (C.D. Cal. 2009) ............................................32

*Conference of Fed. Sav. & Loan Ass'ns v. Stein*,
    604 F.2d 1256 (9th Cir. 1979), *aff'd*, 445 U.S. 921 .......................4, 27

*Coppes v. Wachovia Mortg. Corp.*,
    No. 2:10-cv-01689-GEB-DAD, 2010 U.S. Dist. LEXIS 115865 (E.D.
    Cal. Oct. 29, 2010)............................................................................29

*Corrie v. Caterpillar, Inc.*,
    503 F.3d 974 (9th Cir. 2007) .............................................................18

*Cosio v. Simental*,
  No. CV 08-6853 PSG, 2009 U.S. Dist. LEXIS 8385 (C.D. Cal. Jan. 27,
  2009) ......................................................................................................... 29

*DeLeon v. Wells Fargo Bank, N.A.*,
  729 F. Supp. 2d 1119 (N.D. Cal. 2010) ......................................................... 8, 26

*Diessner v. Mortgage Elec. Reg. Sys.*,
  618 F. Supp. 2d 1184 (D. Ariz. 2009) .............................................................. 35

*Doe v. Schwarzenegger*,
  No. CV F 08-1219 LJO DLB PC, 2009 U.S. Dist. LEXIS 64756 (E.D.
  Cal. July 28, 2009) ........................................................................................... 6

*Ecological Rights Found. v. Pac. Gas & Elec. Co.*,
  713 F.3d 502, 520 (9th Cir. Apr. 3, 2013) .................................................. 19, 39

*Garcia v. City of Chicago*,
  24 F.3d 966 (7th Cir. 1994) .............................................................................. 38

*Greenwood v. Federal Aviation Admin.*,
  28 F.3d 971 (9th Cir. 1994) .............................................................................. 42

*Hava v. U.S. Bancorp.*,
  2009 U.S. Dist. LEXIS 119857 (N.D. Cal. Dec. 22, 2009) ............................... 32

*Hulse v. Ocwen Fed. Bank, FSB*,
  195 F.Supp.2d 1188 (D. Or. 2002) ................................................................... 34

*In re Exxon Mobil Corp. Securities Litig.*,
  500 F.3d 189 (3d Cir. 2007) ............................................................................. 21

*In re: Wachovia Corp. "Pick-A-Payment" Mortgage Marketing and Sales
  Practices Litigation*,
  No. 5:09-md-02015-JF (N.D. Cal. Feb. 13, 2009) (Fogel, J.) ............................. 2

*Gov't Computer Sales Inc. v. Dell Mktg.*,
  199 Fed. Appx. 636 (9th Cir. 2006) ................................................................. 38

*Independent Towers of Wash. v. Washington*,
  350 F.3d 925 (9th Cir. 2003) ............................................................................ 41

*Ines v. Countrywide Home Loans*,
    No. 08cv1267 WQH (NLS), 2008 U.S. Dist. LEXIS 88739, 2008 WL
    4791863 (S.D. Cal. Nov. 3, 2008) .......................................................34

*Izenberg v. ETS Servs., LLC*,
    589 F. Supp. 2d 1193 (C.D. Cal. 2008) ..............................................34

*Johnson v. Buckley*,
    356 F.3d 1067 (9th Cir. 2004) ............................................................38

*Jones-Boyle v. Washington Mut. Bank, F.A.*,
    2010 U.S. Dist. LEXIS 78208 (N.D. Cal. July 7, 2010) (Fogel, J.)....32

*Kloth v. Citibank*,
    33 F. Supp. 2d 115 (D. Conn. 1998).....................................................35

*Kohler v. Inter-Tel Techs.*,
    244 F.3d 1167 (2001).........................................................................41

*Leadsinger, Inc. v. BMG Music Publ'g*,
    512 F.3d 522 (9th Cir. 2008) ..............................................................18

*Leer v. Murphy*,
    844 F.2d 628 (9th Cir. 1988) ..............................................................40

*Mandrigues v. World Sav., Inc.*,
    No. 5:07-cv-04497-JF, 2008 U.S. Dist. LEXIS 31810
    (N.D. Cal. Apr. 9, 2008) (Fogel, J.)...........................................*passim*

*Mansour v. Cal-Western Reconveyance Corp.*,
    618 F. Supp. 2d 1178 (D. Ariz. 2009) ................................................34

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) ......................................................18, 19

*Maxwell v. County of San Diego*,
    708 F.3d 1075 (9th Cir. Cal. Feb. 14, 2013).......................................19

*McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*,
    339 F.3d 1087 (9th Cir. 2003) ............................................................18

*McOmie-Gray v. Bank of America Home Loans*,
    667 F.3d 1325 (9th Cir. 2012) ............................................................21

*Miller v. Fairchild Indus., Inc.*,
   797 F.2d (9th Cir. 1986) ....................................................................40

*Miller v. Yokohama Tire Corp.*,
   358 F.3d 616 (9th Cir. 2004) ......................................................38, 39

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) ............................................................19

*N/S Corp. v. Liberty Mut. Ins. Co.*,
   127 F.3d 1145 (9th Cir. 1997) ............................................................6

*Nava v. Virtual Bank*,
   No. 2:08-CV-00069-FCD-KJM, 2008 U.S. Dist. LEXIS 72819 (E.D.
   Cal. July 16, 2008) ............................................................................29

*Navajo Nation the U.S. Forest Serv.*,
   535 F.3d 1058 (9th Cir. 2008) ....................................................22, 42

*Newbeck v. Wash. Mut. Bank*,
   No. 09-1599, 2010 U.S. Dist. LEXIS 3830 (N.D. Cal. Jan. 19, 2010) .............32

*Nguyen v. Wells Fargo Bank, N.A.*,
   749 F. Supp. 2d 1022 (N.D. Cal. 2010) ........................................8, 23

*Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*,
   841 F.2d 918 (9th Cir. 1988) ............................................................41

*Ohanian v. Irwin (In re Irwin)*,
   No. CIV-F-05-0940 AWI, 2007 U.S. Dist. LEXIS 45848 (E.D. Cal.
   June 13, 2007) (Ishii, J.) ..................................................................35

*Okwu v. McKim*,
   682 F.3d 841 (9th Cir. 2012) ............................................................18

*R.T. Vanderbilt Co. v. Babbitt*,
   113 F.3d 1061 (9th Cir. 1997) ..........................................................18

*Rowe v. Educ. Credit Mgmt. Corp.*,
   559 F.3d 1028 (9th Cir. 2009) ..........................................................18

*Seattle Sch. Dist. v. B.S.*,
   82 F.3d 1493 (9th Cir. 1996) ............................................................41

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985)..................................................................34

*Sekiya v. Gates*,
   508 F.3d 1198 (9th Cir. 2007) (per curiam) ...........................6

*Silvas v. E\*Trade Mortgage Corp.*,
   514 F.3d 1001 (9th Cir. 2008) ........................................*passim*

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001), *amended by* 275 F.3d 1187................................19

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) (per curiam) ...........................19

*Taguinod v. World Sav. Bank, FSB*,
   755 F. Supp. 2d 1064 (C.D. Cal. 2010) ...............................26

*United States ex rel. Lee v. Corinthian Colleges*,
   655 F.3d 984 (9th Cir. 2011) ................................37, 38, 39

*United States v. Dunkel*,
   927 F.2d 955 (7th Cir. 1991) ......................................22, 40

*United States v. Washington*,
   573 F.3d 701 (9th Cir. 2009) ........................................18

*Wadlington v. Credit Acceptance Corp.*,
   76 F.3d 103 (6th Cir. 1996) ..........................................35

*Wang Labs. v. Kagan*,
   990 F.2d (9th Cir. 1993) ..............................................41

*Zlotnik v. U.S. Bancorp*,
   No. C 09-3855 PJH, 2009 U.S. Dist. LEXIS 119857
   (N.D. Cal. Dec. 22, 2009) (Hamilton, J.).................23, 24, 25

STATE CASES

*Abdallah v. United Sav. Bank*,
   43 Cal. App. 4th 1101 (1996) ........................................37

*Akopyan v. Wells Fargo Home Mortgage, Inc.*,
  215 Cal. App. 4th 120 (Apr. 4, 2013)............................................................26

*Clayton Dev. Co., Inc. v. Falvey*,
  206 Cal. App. 3d 438 (1988) ...........................................................................35

*Estate of Palmer*,
  145 Cal. App. 2d 428 (1956) .............................................................................6

*Farmers Ins. Exch. v. Superior Court*,
  2 Cal.4th 377 (1992) ........................................................................................23

*FPCI RE-HAB 01 v. E & G Investments, Ltd.*,
  207 Cal. App. 3d 1018 (1989) ...............................................................8, 35, 37

*Gavina v. Smith*,
  25 Cal. 2d 501 (1944) ......................................................................................37

*Ingels v. Westwood One Broad. Servs., Inc.*,
  129 Cal. App. 4th 1050 (2005) ........................................................................23

*Jones v. First American Title Ins. Co.*,
  107 Cal. App. 4th 381 (2003) ..........................................................................36

*Khoury v. Maly's of Cal., Inc.*,
  14 Cal. App. 4th 612 (1993) ............................................................................23

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal.4th 1134 (2003) ....................................................................................23

*Lopez v. World Savings & Loan Assn.*,
  105 Cal. App. 4th 729 (2003) ..........................................................................30

*McElroy v. Chase Manhattan Mortgage Corp.*,
  134 Cal. App. 4th 388 (2005) ..........................................................................37

*Medeiros v. Medeiros*,
  177 Cal. App. 2d 69 (1960) .......................................................................40, 41

*Onofrio v. Rice*,
  55 Cal. App. 4th 413 (1997) ............................................................................37

*Shimpones v. Stickney*,
    219 Cal. 637 (1934) ...........................................................................37

*Stebley v. Litton Loan Servicing, LLP*,
    202 Cal. App. 4th 522 (2011) ....................................................36, 37

**FEDERAL STATUTES**

12 U.S.C. §§ 1461–1470 ...........................................................................4

12 U.S.C. § 1463(a)(2) .............................................................................27

15 U.S.C. §§ 1601-1667f ...........................................................................2

15 U.S.C. § 1635(f) ..................................................................................20

15 U.S.C. § 1640(e) ............................................................................20, 23

15 U.S.C. §§ 1692–1692p ..................................................................16, 25

18 U.S.C. § 1341 ......................................................................................16

18 U.S.C. §§ 1961–1968 .......................................................................5, 34

28 U.S.C. § 1291 ........................................................................................7

28 U.S.C. § 1331 ........................................................................................6

28 U.S.C. § 1406(a) ..............................................................................7, 14

**STATE STATUTES**

CAL. BUS. & PROF. CODE, §§ 17200–17210 .....................................3, 22, 25

CAL. CIV. CODE § 1670.5 ...........................................................................3

CAL. CIV. CODE § 3528 ............................................................................35

CAL. CODE CIV. PROC. § 338(d) ...............................................................25

CAL. CODE CIV. PROC. § 339(1) ...............................................................25

CAL. EVID. CODE §§ 1532 & 1330 ...........................................................10

CAL. FIN. CODE § 22302(b) .....................................................................3, 4

x

CAL. FIN. CODE § 22713 ........................................................................4

CODE CIV. PROC. § 337(1)..................................................................25

## RULES

9TH CIR. R. 28-2.2(c)......................................................................6, 7

FED. R. APP. P. 3(a) ...........................................................................7

FED. R. APP. P. 4(a)(1).......................................................................7

Fed. R. Civ. P. 12(b)(6) ...............................................4, 7, 15, 17

Fed. R. Civ. P. 15(a)(2) ...................................................................39

## REGULATIONS

12 C.F.R. §§ 560.1–560.220 .........................................................4, 27

12 C.F.R. § 560.2 ........................................................................27, 28

12 C.F.R. § 560.2(b)(4), (9) & (10) ..................................27, 28, 29, 32

61 Fed. Reg. 50951, 50966–67 ........................................................28

## OTHER AUTHORITIES

10 CAL. JUR., p. 512 *et seq*..............................................................37

Rylaarsdam, *Cal. Practice Guide: Civ. Proc. Before Trial Statutes of
    Limitations* (Rutter Group 2013) ...........................................21

## I.    INTRODUCTION

In the heady years of the mid-aughts, Plaintiff-Appellant Lamont Johnson was a small-scale real estate investor who engaged in multiple real estate transactions involving his residence and various investment properties in Sacramento County, California.  During an 18-month period between March 2005 and September 2006, Johnson called upon a federal savings bank (World Savings Bank, FSB, the predecessor of Defendant-Appellee Wells Fargo[1]) to obtain four different loans totaling $966,600.[2]  Each one of his loans was secured by a deed of trust recorded against four different real properties—the Diamond Rock Property, the York Town Condominium, the Teal Bay Property, and the Club Center Condominium.

Johnson admits to drawing down an equity line of credit on the York Town Condominium in order to purchase and maintain his other properties.  He eventually stopped making payments on those loans, however.  Wells Fargo initiated non-judicial foreclosures under its power of sale in each of the deeds of trust.  The various properties were subsequently sold at trustee's sales which took

---

[1]    Wells Fargo herein denotes the single entity Defendant-Appellee Wells Fargo Bank, N.A., successor to by merger with Wells Fargo Bank Southwest, N.A., formerly known as Wachovia Mortgage, FSB (Wachovia), formerly known as World Savings Bank, FSB (World Savings).

[2]    This sum includes the maximum borrowing power available under an equity line of credit of up to $140,000.  And Johnson borrowed the maximum.

place between April 2010 and November 2011.  Wells Fargo sustained aggregate losses in excess of $640,000 as a result of Johnson's loan defaults and the resulting foreclosures.

In May 2010—more than 3 years, 7 months after the fourth and last his loans had originated in September 2006—Johnson initiated a suit for damages in the Northern District of California.  He initially alleged claims for fraudulent misrepresentation, harassment, fraudulent conveyance, and violations of the Truth in Lending Act (TILA[3]) allegedly arising at the origination of his various loans.

Johnson also claimed to be "a similarly situated victim of" wrongful lending practices alleged in the *Mandrigues* class action.[4]  His civil case cover sheet stated that his lawsuit was related to *Mandrigues*.  Based on these references by Johnson to *Mandrigues*, his case was referred to Judge Fogel, the presiding judicial officer

---

[3]    Codified at 15 U.S.C. §§ 1601-1667f , TILA requires a lender to provide standard disclosures at loan origination regarding the terms and costs associated with borrowing.

[4]    *Mandrigues v. World Savings, Inc., et al.*, No. 5:07-cv-04497-JF (N.D. Cal. Aug. 30, 2007) (Fogel, J.) was a class action initiated in 2007 which alleged TILA violations, violations of California's Unfair Competition Law, breach of contract, and breach of the implied covenant of good faith and fair dealing involving World Savings's "Pick-A-Payment" loans.  The case eventually became one of several actions consolidated in the Multidistrict Litigation (MDL) known as *In re: Wachovia Corp. "Pick-A-Payment" Mortgage Marketing and Sales Practices Litigation*, No. 5:09-md-02015-JF (N.D. Cal. Feb. 13, 2009) (Fogel, J.).  The MDL was settled without admission of liability or wrongdoing, and court approval of the settlement was entered on May 17, 2011.  *Id.* at Dkt. Nos. 207 & 112.

in that class action for consideration of whether it was, in fact. a related case. Judge Fogel determined that Johnson's case was not related to *Mandrigues*, and that no reassignment of should occur.  Johnson's case was subsequently transferred from the Northern to the Eastern District of California, the venue where he and the subject properties were located.

Through privately retained counsel, Johnson filed a first "amended complaint" (the FAC) in August 2010.  He asserted seven claims for various violations of TILA, the state Unfair Competition Law (UCL),[5] breach of contract, breach of the implied covenant of good faith and fair dealing, and "misrep-resentation/fraud."  Johnson alleged that World Savings did not clearly and conspicuously disclose the interest rates on his various loans or the fact that the loans might negatively amortize.  His state law UCL claims were premised on these same TILA violations, contentions that World Savings deceptively marketed its interest rates, and on a California state statute permitting avoidance of an unconscionable contract.[6]  Johnson's claims for breach of contract and of the

---

[5]   Cal. Bus. & Prof. Code, §§ 17200–17210.

[6]   Cal. Fin. Code § 22302(b) provides:  "A loan found to be unconscionable pursuant to Section 1670.5 of the Civil Code shall be deemed to be in violation of [the California Finance Lenders Law] and subject to the remedies specified in this division."  Cal. Civ. Code § 1670.5 permits a court to refuse to enforce or limit a contract or part thereof if it finds as a matter of law that the contract was unconscionable when made.  But the California Financial Code provides for

*[Footnote Text Cont'd on Next Page]*

implied covenant of good faith and fair dealing were based on the allegedly wrongful application of prior payments to interest instead of principal. His claim for misrepresentation involved an alleged promise that the loan on the Diamond Rock Property would be modified, a claim he subsequently abandoned.

Wells Fargo successfully moved for dismissal of Johnson's claims, none of which survived the scrutiny of its Rule 12(b)(6) motion. The district court ruled that Johnson's TILA claims were time-barred, and that his state law claims were preempted by the Home Owners' Loan Act (HOLA).[7] Judgment was entered after the court granted Wells Fargo's motion to dismiss without leave to amend.

---

*[Footnote Text Cont'd from Previous Page]*
governmental enforcement only under its § 22713; there is no private right of action. *Cazares v. Household Fin. Corp.*, Nos. CV 04-6887 DSF (SSx) & CV 04-2548 DSF (SSx), 2005 U.S. Dist. LEXIS 39222, *36 (C.D. Cal. July 26, 2005); *see also*, *Biggins v. Wells Fargo & Co.*, 266 F.R.D. (N.D. Cal. 2009) ("[C]laim [under § 22302(b) & UCL] must be dismissed, because the allegation that 'the hidden terms specifying that the loans would reset multiple times - are onerous to the point of being unconscionable' is a bare legal conclusion unsupported by facts.")

[7]   HOLA is codified at 12 U.S.C. §§ 1461–1470. Its implementing regulations issued by the U.S. Treasury Department's Office of Thrift Supervision (OTS) are codified at 12 C.F.R. §§ 560.1–560.220. *See Silvas v. E*Trade Mortgage Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008), quoting *Conference of Fed. Sav. & Loan Ass'ns v. Stein*, 604 F.2d 1256, 1260 (9th Cir. 1979), *aff'd*, 445 U.S. 921 ("We have described HOLA and its following agency regulations as … 'so pervasive as to leave no room for state regulatory control.'").

In discussing the action, the district court ruled that a second amended complaint, prepared by Johnson without the assistance of his attorney,[8] was itself legally insufficient.  Its allegations of RICO violations,[9] and wire and mail fraud claims, among others, were found to neither cure the persistent statute of limitations deficiencies nor overcome federal preemption, and it was incurably deficient.

On this appeal, Johnson purports to raise no less than 57 enumerated issues, rhetorical questions to which no answers are provided, and conclusory assertions generally unsupported throughout the brief by citations to the record or to relevant authority.  These are presented to the Court in a soup sandwich of more than 40,000 words—hard to read, difficult to understand.  "Instead of a fair and sincere effort to show that the trial court was wrong, appellant's brief is a mere challenge to respondents to prove that the court was right.  And it is an attempt to place upon the court the burden of discovering without assistance from appellant any weakness in the arguments of the respondents.  An appellant is not permitted to

---

[8]    Johnson and his privately retained attorney parted ways at various times during the lawsuit.  Their relationship terminated once and for all at the end of October 2011, about seven months before Wells Fargo filed its motion to dismiss after it was served in May 2012.

[9]    Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968.

evade or shift his responsibility in this manner." *Estate of Palmer*, 145 Cal. App.

2d 428, 431 (1956); *see also N/S Corp. v. Liberty Mut. Ins. Co.*, 127 F.3d 1145 (9th

Cir. 1997).[10]

Largely unmoored to the record and aimlessly drifting without cogent

argument or analysis, Johnson's opening brief on appeal has offered zero basis for

finding reversible error on this record. The judgment of the district court is

unassailably correct, and it should be affirmed.

## II.     JURISDICTIONAL STATEMENT

This civil action was originally commenced by Johnson in the U.S. District

Court for the Northern District of California on the basis of federal question

jurisdiction under 28 U.S.C. § 1331. (SER 504:7-16.[11]) 9TH CIR. R. 28-2(a).

---

[10]   "[W]e must insist that parties not clog the system by presenting us with a slubby mass of words." 127 F.3d at 1146; *accord Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir. 2007) (per curiam); *Baghdasarian v. SRT Partners, LLC (In re Baghdasarian)*, No. CC-11-1568-KiDH, 2012 Bankr. LEXIS 5806 (B.A.P. 9th Cir. Dec. 14, 2012) (pro se appellant's opening brief "fails even to set forth, at least in a coherent manner, the facts relevant to this appeal" and "consists mostly of a series of cut-and-paste articles and pleadings he has filed in other cases."); *Doe v. Schwarzenegger*, No. CV F 08-1219 LJO DLB PC, 2009 U.S. Dist. LEXIS 64756 (E.D. Cal. July 28, 2009) (pro se "[p]laintiff's reconsideration papers are largely incoherent gibberish.")

[11]   References to the SER are to the Supplemental Excerpts of Record served and filed by Appellee in three volumes, consecutively paginated at the bottom right-hand corner of each page. Numbers following a colon refer to line numbers where they appear on the original of the cited page.

Pursuant to 28 U.S.C. § 1406(a), the case was subsequently transferred to the Eastern District of California where Johnson and the subject real properties were located. (SER 545 [Dkt. Nos. 17–18].) The district court disposed of Johnson's claims by granting Wells Fargo's Rule 12(b)(6) motion to dismiss without leave to amend (SER 004–010; 002–003), and judgment was entered on October 10, 2012. (SER 001.) Johnson filed a timely notice of appeal on October 24, 2012. (SER 017–018.) This Court has jurisdiction pursuant to 28 U.S.C. § 1291. FED. R. APP. P. 3(a) & 4(a)(1); 9TH CIR. R. 28-2.2(c).

## III.   STATEMENT OF ISSUES PRESENTED FOR REVIEW

**A.**      The Truth in Lending Act (TILA) provides a one-year statute of limitations for damages claims, and a three-year statute of limitations for claims of rescission. Johnson's four loans originated between March 2005 and September 2006. He filed suit 3 years, 7 months later in May 2010, seeking damages and rescission under TILA. Are his claims barred by TILA's limitations period?

**B.**      Johnson's various state law claims challenged loan disclosures, marketing and advertising practices, loan origination and processing, and terms of credit by a federal savings bank. Did the district court correctly find that the Home Owners' Loan Act (HOLA), as applied, preempted these state law claims?

-7-

**C.**     The district court concluded that Johnson's proposed second amended complaint did not cure the deficiencies evident in the first amended complaint, and that further amendment would be futile.  Did the district court abuse its discretion in reaching this conclusion?

## IV.    STATEMENT OF FACTS

The facts are as drawn from the pleadings, attachments to the pleadings, and matters which are the proper subject of judicial notice.

During an 18-month span of time running from March 2005 to September 2006, Plaintiff-Appellant Lamont Johnson engaged in four loan transactions with World Savings Bank, FSB, the predecessor of Wells Fargo.[12]  These loans totaled $966,600 and were secured by four different properties in Sacramento County, California.  "The money for all four loans was borrowed from World Savings Bank, which was a federal savings bank, organized and operated under the Home

---

[12]   Wells Fargo, Bank, N.A., through name changes and a corporate merger, succeeded to its predecessors Wachovia Mortgage, FSB (Wachovia)  and World Savings Bank, FSB (World Savings).  (SER 342:3-13 [¶¶ 9–12], 448–455 [Req. for Judicial Ntc. ("RJN") Exs. 9–12]; *see* SER 005:5-8)  Many courts have taken judicial notice of the name changes and merger associated with Wells Fargo.  *See, e.g.*, *Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1035 (N.D. Cal. 2010) (World Savings Bank, FSB changed its name to Wachovia Mortgage, FSB, then merged into Wells Fargo Bank, N.A.); *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1121 (N.D. Cal. 2010) (same).

Owners' Loan Act ('HOLA') and regulated by the Office of Thrift Supervision ('OTS')."  (SER 005:2-5.)

On March 31, 2005, Johnson borrowed $290,000 from World Savings reflected in an Adjustable Rate Mortgage Note (the Diamond Rock Loan).  (SER 346–351; 500:14-16)  The Diamond Rock Loan was secured by a Deed of Trust recorded in Sacramento County on April 8, 2005, encumbering real property located at 7937 Diamond Rock Drive, Antelope, California (the Diamond Rock Property).  (SER 353–369; 500:14-16.)

Next, on February 8, 2006, he entered into an Equity Line of Credit Agreement with World Savings (the York Town ELOC).  (SER 371–378; 500:23-25)  The York Town ELOC was secured by an Open End Deed of Trust recorded in Sacramento County on February 10, 2006, encumbering real property located at 7311 York Town Place, Unit 802, Sacramento, California (the York Town Condominium).  (SER 380–396; 500:14-16.)

According to Johnson, he "used money from the Yorktown property loan to purchase his Club Center Drive property, the Teal Bay property and to maintain all the properties."  (AOB 6 [¶ 38].)

The following month, on March 20, 2006, Johnson borrowed $345,050 from Wells Fargo reflected in an Adjustable Rate Mortgage Note (the Teal Bay Loan).  (SER 398–403; 500:17-19.)  The Teal Bay Loan was secured by a Deed of Trust

recorded in Sacramento County on March 28, 2006, encumbering real property located at 4632 Teal Bay Court, Antelope, California (the Teal Bay Property). (SER 405–421; 500:17-19.)

Finally, on September 25, 2006, he borrowed $191,550 from Wells Fargo reflected in another Adjustable Rate Mortgage Note (the Club Center Loan).  (SER 423–428; 500:20-22.)  Johnson says that he "used the equity line on the Yorktown property to put a down payment on" the Club Center Property.  (SER 075:4-6 [¶ 16].)  The Club Center Loan was secured by a Deed of Trust recorded in Sacramento County on September 27, 2006, encumbering a condominium located at 2001 Club Center Drive, Unit 102, Sacramento, California (the Club Center Condominium).  (SER 430–447; 500:17-19.)

Johnson defaulted on the Diamond Rock Loan, the Club Center Loan, the Teal Bay Loan, and the York Town ELOC.  (SER 457–471 [RJN Exs. 13–16]; 050–051; 005:8-9.)  Cal. Evid. Code §§ 1532 & 1330.  Nonjudicial foreclosures of the properties securing these loans followed.  (*Id.*)

According to Johnson, defendants "knew they didn't have a legal Security interest" in the York Town Condominium (AOB 6 [¶ 38] & 3–4 [¶¶ 12–16]), because the unit number does not appears in the property description's address, but rather it appears in the full legal description that is attached as an exhibit to the

-10-

Open End Deed of Trust.  (*Compare* SER 381 [address of "7311 York Town Place, Sacramento, CA 95842"], *with* SER 394 [specifying "Unit 802"].)[13]

As for the Club Center Condominium, in his own words, Johnson just decided:  "Because Plaintiff was given so much bad customer service from defendant Wachovia, plaintiff stopped paying on his last remaining mortgage. This was the property located at 2001 Club Center Dr. unit 6102 [sic], Sacramento, CA 95835."  (SER 077:7-9 [¶ 30].)

Wells Fargo sustained aggregate loan losses of more than $640,000 by reason of the various trustee's sales of the four real properties held between April 2010 and November 2011 as described below.  (SER 457, 460, 465 & 468.)

The trustee's sale of the Diamond Rock Property took place on April 13, 2010.  (SER 458.)  At this trustee's sale, Wells Fargo took title to the Diamond Rock Property by virtue of a credit bid, sustaining a loan loss of $190,620.46, as reflected in the Trustee's Deed Upon Sale (TDUS) recorded on April 21, 2010.

---

[13]  According to Johnson on secured liens, he would at once admit to drawing down the York Town ELOC in order to "purchase" and "maintain" other properties (AOB 6 [¶ 38]), but the loan would be "unsecured" because the unit number for the condominium appears in the full legal description of the property in an addendum to the Open End Deed of Trust.  (SER 394.)  "Sometimes we just simply make mistakes," Johnson says.  (SER 085:7 [¶ 76].)  By Johnson's way of thinking, this mistake (if there were), would entitle Johnson to borrow the money, but without forfeiting the property securing the loan after his default.  "Plaintiff still owed the money," Johnson says, but Wells Fargo "would have to stand in line with all of the other unsecured creditors."  (SER 079:15-18 [¶ 45].)

(SER 457 ["2) The amount of the unpaid debt together with cost was $347,126.76 [¶] 3) The amount paid by the grantee at the trustee sale was $156,506.30."].)

The following month on May 21, 2010, a trustee's sale took place of the Club Center Condominium.  (SER 463.)  Wells Fargo took title to the Club Center Condominium by virtue of a credit bid.  It there by sustained another loan loss, this time in the amount of $113,642.35, reflected in the TDUS recorded on June 2, 2010.  (SER 460 ["The Amount Of The Unpaid Debt was $221,607.35 [¶] The Amount Paid By the Grantee Was $107,965.00."].)

On September 7, 2010, the trustee's sale was held of the Teal Bay Property (SER 458).  Wells Fargo took title to this property by virtue of a credit bid (SER 465), and incurred another sizeable loan loss, this time in the amount of $238,329.73, as reflected in the Trustee's Deed recorded on September 14, 2010.  (SER 465 ["2.  The amount of the unpaid debt together with costs was $463,721.73 [¶] 3.  The amount paid by the Grantee at the Trustee's Sale was $225,392.00."].)

A little more than a year later, on November 10, 2011, the last of the four trustee's sales took place. (SER 469.)  The successful bidder, a third party named C & C Sierra, took ownership of the York Town Condominium for $72,511.01.  Accordingly, Wells Fargo sustained a loan loss of $98,962.18 on the York Town ELOC.  (SER 468 ["2.  The amount of the unpaid debt together with costs was

-12-

$463,721.73 [¶] 3.  The amount paid by the Grantee at the Trustee's Sale was $225,392.00."].)

## V.    STATEMENT OF THE CASE

Over 3 years, 7 months had passed since Johnson's fourth and last World Savings loan had originated in September 2006, when Johnson commenced this lawsuit against Wells Fargo in the Northern District of California on May 11, 2010, in the midst of various foreclosures of the properties.  (SER 543 [Dkt. No. 1].)  Johnson retained a private attorney named Roxanne Mosley a couple of months after filing his original complaint.  (SER 543 [Dkt. No. 4].)  As the district court observed in its order of dismissal, "The gravamen of [Johnson's] complaint is that he was induced to take out loans that he could not afford to repay based on misrepresentations by the lender's agent that the loans would not have negative amortization and that [Johnson] would be able to refinance the loans when the payments became too high."  (SER 005:10-13.)

Johnson alleged that he was "a similarly situated victim of" the *Mandrigues* class action (SER 531), and also indicated on his civil case cover sheet that the two cases were related (SER 530).  Therefore, the court referred his lawsuit to the class action's presiding judicial officer, Judge Fogel, to consider whether Johnson's case and the pending class action pending were related.  (SER 544 [Dkt. No. 5].)  In mid-August 2010, Judge Fogel determined that the *Mandrigues* class action and

-13-

Johnson's case were *not* related and there would be no reassignment of cases. (SER 544 [Dkt. No. 6].)  Johnson called court staff next to tell them that he was no longer represented by his attorney Ms. Mosley, but was instead representing himself.  (SER 544 [Dkt. No. 13].)

In September 2010, the court issued an order to show cause why Johnson's case should not be transferred to the Eastern District of California in view of the fact that Judge Fogel had determined that his case was not related to *Mandrigues*, and because both Johnson and all of the subject properties were situated in that district.  The case was transferred the following month in accordance with 28 U.S.C. § 1406(a).  (SER 545 [Dkt. Nos. 17 & 18].)

On October 5, 2010, Johnson's putatively former attorney, Ms. Mosley, filed the first "Amended Complaint" (the FAC).  (SER 499–529.)  The FAC alleged TILA claims (SER 508:25–517:18 [¶¶ 38–74]), state UCL violations (SER 517:19–518:14 [¶¶ 75–79]; 518:15–521:11 [¶¶ 80–93] & 524:14–526:6 [¶¶ 112–124]), and state law claims for breach of contract (SER 521:12–522:27 [¶¶ 94–102]), breach of the implied covenant of good faith and fair dealing (SER 523:1–524:13 [¶¶ 103–111]), and misrepresentation (SER 526:7-24 [¶ 125]).

After multiple OSCs were issued against her, Ms. Mosley represented to the court in February 2011 that she was, in fact, representing Johnson, having resolved the misunderstandings between them.  (SER 546 [Dkt. Nos. 27, 29, 30 & 32].))

-14-

About eight months later in October 2011, however, the court granted Johnson's request that he replace Ms. Mosley and proceed pro se.  (SER 547 [Dkt. Nos. 39 & 41].)

Wells Fargo was eventually served with Johnson's FAC in May 2012.  (SER 548 [Dkt. Nos. 46–48].)  At this point in time, all of the properties had long since been sold, the last one (the York Town Condominium) more than six months earlier in November 2011.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Wells Fargo moved to dismiss all of Johnson's claims in the FAC on June 5, 2012  (SER 473–495.)  Wells Fargo's motion was supported by an accompanying request for judicial notice which included the relevant loans, deeds of trust, trustee's deeds upon sale, and documents showing the corporate name changes and merger of World Savings, Wachovia, and Wells Fargo.  (SER 340–472.)

In response, Johnson filed approximately 300 pages of documents in multiple oppositions.  (SER 330–339, 171–329, 060–161.)  Among the responsive documents was a proposed second amended complaint drafted by Johnson.  (SER 200–328.[14])  Johnson abandoned completely his misrepresentation claim based on

---

[14]  No longer under the watch and direction of his attorney, Johnson went in an entirely different direction with his action, proposing to pursue a "criminal"-styled pleading based on "racketeering," "wire" and "mail fraud."  In the proposed second amended complaint, Johnson abandoned all of the prior claims advanced by

*[Footnote Text Cont'd on Next Page]*

an alleged promise to modify his Diamond Rock Loan. (SER 009:3-5 ["Plaintiff makes no argument in opposition to the motion to dismiss this claim and has dropped it in the proposed amended complaint. It appears plaintiff concedes this claim is meritless and it should be dismissed."].) Wells Fargo replied by way of a further motion to dismiss. (SER 162–170.) On September 12, 2012, a hearing was held on Wells Fargo's motion to dismiss before the magistrate judge assigned to Johnson's case, and the matter was submitted for a formal order. (SER 011–016; 550 [Dkt. No. 64].)

On September 17, 2012, the magistrate judge issued a detailed 7-page order with findings and recommendations that Wells Fargo's motion to dismiss Johnson's claims be granted and the action be closed. (SER 004:16–010:2.) In reaching its decision, the court also reviewed and analyzed Johnson's proposed second amended complaint. (SER 005:19–006:26 [n. 2].) The court found that further amendment would be futile because Johnson had again been unable to cure

*[Footnote Text Cont'd from Previous Page]*

his prior attorney Ms. Mosley, except the one for breach of the implied covenant and fair dealing. (SER 222:8–223:4 [¶¶ 112–119].) He replaced the previous claims with new "counts" (a) to "quiet title" to the York Town Condominium (SER 208:22–214:19 [¶¶ 41–74]), (b) for "mail fraud" under 18 U.S.C. § 1341. (SER 214:21–217:23 [¶¶ 75–86]), with (c) a RICO claim for "conspiracy to commit mail fraud" (SER 217:26–219:101 [¶¶ 87–101]), (d) an alleged violation of the Fair Debt Collection Practices Act (the FDCPA is codified at 15 U.S.C. §§ 1692–1692p) (SER 220:3–221:16 [¶¶ 102–107]), and (e) a claim for "wire fraud" (SER 221:20–222:5 [¶¶ 108–111]).

-16-

the inherent defects in his prior pleading—due to profound and fatally dispositive statutes of limitations problems, HOLA preemption, and other deficiencies.  (*Id.* & 009:6-8.)  In response to the magistrate's findings and recommendations, Johnson filed 17 pages of single-spaced objections supported by 5 exhibits.  (SER 019–059.)

One of the exhibits was a letter from a psychiatrist indicating that Johnson is "taking psychotropic medications."  (SER 037).[15]

On October 10, 2012, the district court conducted a novo review of the Magistrate Judge's Order, Findings and Recommendation, adopted them in full, and ordered Johnson's case dismissed and closed.  (SER 002:16–003:5.)  Judgment was entered the same day.  (SER 001.)  Johnson filed a timely notice of appeal. (SER 017–018.)

On appeal, Johnson has served, filed, or both, several different versions of his opening brief, and other supplementary material.  (9th Cir. Dkt. Nos. 12, 13, 14, 15, 18, & 19.)  Counsel for Wells Fargo has been advised by the Clerk that the document appearing on the Court's docket as Entry Number 18 is to be treated as the operative opening brief to which this responsive answering brief is now directed.

---

[15]  This appears to be the otherwise unidentified "disability" to which Johnson is referring in his opening brief under one of its sections entitled "ADA Accommodations."  (AOB 23–24.)

-17-

# VI.   STANDARD OF REVIEW

This Court reviews "de novo the district court's dismissal of a complaint for failure to state a claim," and it reviews "for abuse of discretion a district court's decision to dismiss with prejudice."  *Okwu v. McKim*, 682 F.3d 841, 844 (9th Cir. 2012) (internal and external citations omitted); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030 (9th Cir. 2008); *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 526 (9th Cir. 2008); *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 979 (9th Cir. 2007).

The reviewing court may affirm the dismissal on any ground supported by the record whether relied upon by the district court or not.  *United States v. Washington*, 573 F.3d 701, 706 (9th Cir. 2009); *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008); *R.T. Vanderbilt Co. v. Babbitt*, 113 F.3d 1061, 1063 n.1 (9th Cir. 1997); *McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1090 (9th Cir. 2003).

The court must accept "all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–1030 (9th Cir. 2009) (quotation marks omitted); *Manzarek*, *supra*, 519 F.3d at 1030–1031; *Leadsinger*, *supra*, 519 F.3d 522, 526.  However, the court is not required to accept as true allegations that contradict exhibits attached to the complaint or that contradict matters which are

properly subject to judicial notice. *Maxwell v. County of San Diego*, 708 F.3d 1075, 1079 n. 1 (9th Cir. Cal. Feb. 14, 2013); *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011); *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam). Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences. *Manzarek*, *supra*, 519 F.3d at 1031; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended by* 275 F.3d 1187.

"Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 507–508 (9th Cir. Apr. 3, 2013); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

## VII.   SUMMARY OF ARGUMENT

Johnson has failed to demonstrate that the district court erred by granting Wells Fargo's motion to dismiss the claims in his FAC. Although prepared by an attorney, the FAC was unable to cure persistent statute of limitations problems, and could not avoid the preemption by HOLA of state law claims arising from the origination of the loans by Wells Fargo's predecessor World Savings, a federal savings bank.

The district court was also correct in finding that the proposed SAC prepared by Johnson after his relationship with his attorney had ended suffered from the same fatal deficiencies.  The court's determination that further amendment would be futile was a reasonable and fair exercise of its discretion, and should not be disturbed on appeal.

The district court's judgment should be affirmed on this record in all respects.

## VIII.  LEGAL ANALYSIS AND ARGUMENT

### A.    Johnson's claims suffered from profound and incurable statute of limitations problems.

#### 1.    *All of Johnson's TILA claims were manifestly time-barred.*

Both the original complaint and the superseding FAC prepared by Johnson's attorney asserted violations of TILA.  (SER 539:1-9 [¶¶ 61–63]; 508:25–517:18 [¶¶ 38–74]).  Both versions of the pleading prayed for "damages" and also "rescission."  (SER 539:19-20 [¶ 6], 527:3-8 [¶¶ A–E]); 539:20-21 [¶ 7], 527:9 [¶ F].)

The statute of limitations for a TILA damages claim is one year.  15 U.S.C. § 1640(e).  The statute of limitations for rescission under TILA is three years.  15 U.S.C. § 1635(f).  The TILA rescission statute of limitations is a statute of repose. *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 411–412 (1998) ("1635(f) completely

extinguishes the right of rescission at the end of the 3-year period."); *McOmie-Gray v. Bank of America Home Loans*, 667 F.3d 1325 (9th Cir. 2012) ("1635(f) is a statute of repose that represents an absolute three-year bar on rescission actions.").

Unlike a statute of limitations which generally does not begin to run until a cause of action has accrued, a statute of repose moreover cuts off a claim even before a plaintiff discovers he has been wronged or damages have been suffered. *Balam-Chuc v. Mukasey*, 547 F.3d 1044, 1048 (9th Cir. 2008) (unlike a statute of limitations, a statute of repose is not subject to tolling); *In re Exxon Mobil Corp. Securities Litig.*, 500 F.3d 189, 200 (3d Cir. 2007); *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 733 (construing statute of repose applicable to product liability actions); *see* Rylaarsdam, *Cal. Practice Guide: Civ. Proc. Before Trial Statutes of Limitations*, ¶¶ 1:30–1:32 (Rutter Group 2013) (collecting federal and state cases regarding statutes of repose).

All of Johnson's loans originated in an 18-month period between March 31, 2005 and September 25, 2006.  (SER 346–351 [Diamond Rock Loan, Mar. 31, 2005]; 371–378 [York Town ELOC, Feb. 8, 2006]; 398–403 [Teal Bay Loan, Mar. 20, 2006]; 423–428 [Club Center Loan, Sept. 25, 2006].)  Johnson first filed suit on May 11, 2010 (SER 531 & 543 [Dkt. No. 1]).  This was more than 3 years, 7 months after the last of his four loans originated.  Therefore, by any calculus, the

district court's conclusion that his TILA claims were barred by the applicable one- and three-year statutes of limitations is undoubtedly correct. (SER 007:8-13.)

This may explain why Johnson abandoned his TILA claims in his proposed second amended complaint. (SER 200–224.) He does, however, appear to "question" the TILA ruling in his opening brief in this appeal (AOB 11 [¶¶ 38 & 42].) Like all of Appellant's 57 one- to two-sentence "issues" without analysis, however, his reference to TILA is "skeletal" at best. *Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2007) ("It is well-established that a bare assertion in an appellate brief, with no supporting argument, is insufficient to preserve a claim on appeal."); *Acosta-Huerta v. Estelle*, 7 F.3d 139, 144 (9th Cir.1992) ("Issues raised in a brief which are not supported by argument are deemed abandoned."); *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim.").

> ## 2. *Johnson's UCL claim based on an alleged TILA violation was similarly barred by TILA's statutes of limitations.*

The UCL precludes any unlawful, unfair, or fraudulent business act or practice. Cal. Bus. & Prof. Code §§ 17200–17210. A UCL claim "borrows" violations of other laws and authorizes a separate action based on the pleading of some business practice that is forbidden by law, and specific facts that show ongoing unlawful, unfair, or fraudulent business acts on the part of the defendant.

*Farmers Ins. Exch. v. Superior Court*, 2 Cal.4th 377, 393 (1992); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1143 (2003); *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993).  If no claim can be stated under the "borrowed" law, a UCL claim cannot be stated either.  *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005); *see also Nguyen v. Wells Fargo Bank, N.A.* 749 F. Supp. 2d 1022, 1037 (N.D. Cal 2010).

One of Johnson's three UCL claims was expressly derivative of his alleged TILA claims.  (SER 517–518:14 [¶¶ 75–79].)  Because Johnson's UCL claim borrowed from his TILA claims, its viability was nullified by the fatal defect of the time-bar inhering in his TILA claims under 15 U.S.C. § 1640(e).  *Castaneda v. Saxon Mortgage Servs., Inc.*, 687 F.Supp.2d 1191, 1202. (E.D. Cal. 2009); *Zlotnik v. U.S. Bancorp*, No. C 09-3855 PJH, 2009 U.S. Dist. LEXIS 119857, *8–*10 (N.D. Cal. Dec. 22, 2009) (Hamilton, J.).[16]

As this Court instructed in *Silvas v. E*Trade Mortgage Company*, "An attempt by Appellants to go outside the congressionally enacted limitation period

---

[16]  "[A]s applied in this case, the UCL conflicts with TILA, as it allows plaintiffs to seek relief for TILA violations, after TILA's statute of limitations has expired.  Plaintiffs … filed their initial complaint … after both the one-year statutory period for damages and the three-year period for rescission had lapsed.  Based on this inconsistency and the Ninth Circuit's disapproval of such a result, the court finds that plaintiffs' claim is preempted by TILA, and is therefore time-barred." *Id.*, citing *Silvas v. E*Trade Mortgage Co.*, 514 F.3d 1001 (9th Cir. 2008).

of TILA is an attempt to enforce a state regulation in an area expressly preempted by federal law." *Silvas*, *supra*, 514 F.3d 1001, 1006 n. 3 (9th Cir. 2008) (disapproving of a plaintiff's attempt to avoid TILA's statute of limitations by alleging violations in terms of California's UCL); *Zlotnik*, *supra*, at *8–*10.

Accordingly, Johnson's UCL claim underpinned by his TILA claims could not survive Wells Fargo's motion to dismiss because his TILA claims had already perished.

### 3. *Any claim involving the origination of Johnson's loans also suffers from statute of limitations issues.*

Although the district court correctly disposed of Johnson's other state law claims in the FAC on HOLA grounds, before moving on to the clear support for those grounds, we can note here that three of the four loans Johnson's borrowed from World Savings had originated more than four years prior to Johnson's commencement of suit on May 11, 2010. (SER 346–351 [Diamond Rock Loan, Mar. 31, 2005]; 371–378 [York Town ELOC, Feb. 8, 2006]; 398–403 [Teal Bay Loan, Mar. 20, 2006].) Only the Club Center Loan which originated on September 25, 2006, came into being less than four years before suit was filed. (SER 423–428.) Nothing unique is alleged regarding the Club Center Loan in particular.

Therefore, a statute of limitations that is four years or less would apply and bar any federal statutory claims or state common law claims involving the origination of all of Johnson's loans except the Club Center Loan. This gives rise

to a host of other statute of limitations problems.  For example, the statute of limitations is one year for a FDCPA violation, one of the new claims Johnson proposed in the SAC.  15 U.S.C. § 1692k(d).  (SER 220:3–221:16 [¶¶ 102–107].)  Under California law, the statute of limitations for breach of an oral contract is two years.  Cal. Code Civ. Proc. §  339(1).  A four year statute of limitations applies equally to common law fraud or misrepresentation claims (Cal. Code Civ. Proc. § 338(d)), breach of written contract claims (Code Civ. Proc. § 337(1)), and state UCL claims (Cal. Bus. & Prof. Code § 17208) not otherwise barred by a verboten attempt to plead around an underlying limitations period.  *Silvas*, *supra*, 514 F.3d at 1006 n. 3; *Zlotnik*, *supra*, 2009 U.S. Dist. LEXIS 119857 at *8–*10.

Given the fact that the gravamen of Johnson's complaint was that he "was induced to take out loans that he could not afford to repay based on misrepresentations by the lender's agent that the loans would not have negative amortization" (SER 005:10-13) and that he "would be able to refinance the loans when the payments became too high" (*id.*)—any origination claims Johnson might conceive of under other fraud and misrepresentation, contractual, UCL, and other theories regarding the Diamond Rock Loan, York Town ELOC, and Teal Bay Loan were and remain fatally time-barred.

**B.    Johnson's state law claims challenge loan disclosures, marketing and advertising practices, loan origination and processing, and terms of credit by a federal savings bank.  The district court correctly determined that these claims are subject to federal preemption by HOLA.**

Johnson's state law claims for violation of the state UCL and breach of the implied covenant of good faith and fair dealing which arose from the origination of the loans by World Savings the predecessor to Wells Fargo.  (SER 485:1–486:25 & 492:26–493:4.)  Each of these claims challenged disclosures, marketing and advertising practices, processing, origination, and terms of credit offered by a federal savings bank.[17]

Johnson's breach of contract claim similarly challenged the terms of credit, *i.e.*, the interest rate on his loans, and the application of payments to interest.  (SER 521:17–27 [¶¶ 94–102].)  Therefore, all of these state law claims were correctly

---

[17]    SER 007:15–008:7 & n. 6; *see* SER 505:3–508:24 [¶¶ 22–37]; 518:21–521:11 [¶¶ 81–93]; 523:3–524:13 [¶¶ 103–111]; 524:19–526:6 [¶¶ 112–124]. HOLA continues to apply to Johnson's claims notwithstanding the fact that World Savings ultimately merged into Wells Fargo.  *See Taguinod v. World Sav. Bank, FSB*, 755 F. Supp. 2d 1064, 1068–1069 (C.D. Cal. 2010) ("Wells Fargo's acquisition of World Savings Bank, FSB does not affect the HOLA preemption defense because the Complaint only addresses the transaction between Plaintiffs and World Savings Bank, FSB.  Moreover, Plaintiffs do not dispute that at the time of the loan, World Savings Bank, FSB was a federally chartered savings association, called a federal savings bank."); *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1126 (N.D. Cal. 2010); *Akopyan v. Wells Fargo Home Mortgage, Inc.*, 215 Cal. App. 4th 120, 143 (Apr. 4, 2013) ("We … conclude that the OTS intended to occupy the field of lending regulation as to both federal thrifts and their loans.").

held by the district court to subject to federal preemption under the Home Owners'

Loan Act (HOLA).  (SER 008:1-5.)

The OTS implements HOLA through regulations promulgated in 12 C.F.R.

560.1–560.220, under the authority of its enabling statute at 12 U.S.C.

§ 1463(a)(2).  12 C.F.R. § 560.2(a) provides:

> [O]TS hereby occupies the entire field of lending regulation for
> federal savings associations.  OTS intends to give federal savings
> associations maximum flexibility to exercise their lending powers in
> accordance with a uniform federal scheme of regulation.
> Accordingly, federal savings associations may extend credit as
> authorized under federal law, including this part, without regard to
> state laws purporting to regulate or otherwise affect their credit
> activities.

Id. § 560.2(a) (emphasis added).  As this Court observed in Silvas, supra, "We

have described HOLA and its following agency regulations as … 'so pervasive as

to leave no room for state regulatory control.'"  514 F.3d at 1005, quoting

Conference of Fed. Sav. & Loan Ass'ns v. Stein, 604 F.2d 1256, 1260 (9th Cir.

1979), aff'd, 445 U.S. 921.

Paragraph (b) of 12 C.F.R. § 560.2 enumerates the types of state laws that

are preempted under HOLA and the OTS's implementing regulations.  State laws

are preempted if they purport to impose requirements regarding terms of credit,

including the amortization of loans, the deferral and capitalization of interest, and

adjustments to the interest rate (§ 560.2(b)(4)); disclosure and advertising of loans,

including laws requiring specific content to be included on credit-related forms and

-27-

documents (§ 560.2(b)(9)); and the processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages (§ 560.2(b)(10)).  As noted previously and discussed below, the factual underpinnings of the state law claims which Johnson's attorney asserted in the FAC, he fell within the rubric of 560.2(b)(4), (b)(9) and (b)(10).  (SER 008:1-5 & n. 5.)

The OTS has directed how to evaluate whether a state law is preempted under § 560.2.  *Silvas*, 514 F.3d at 1005.  "When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b).  If so, the analysis will end there; the law is preempted."  *Id.*, quoting OTS, Final Rule, 61 Fed. Reg. 50951, 50966–67 (Sept. 30, 1996).  By its express terms, Paragraph (b) of  § 560.2 preempts "state laws purporting to impose requirements regarding "terms of credit," "disclosure and advertising," and the "processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. § 560.2(b)(4), (9) & (10).  *See Silvas*, *supra*, 514 F.3d at 1005, n. 1, citing *Auer v. Robbins*, 519 U.S. 452 (1997) (agency interpretation of its own regulation is given "controlling weight"); *Bassiri v. Xerox Corp.*, 463 F.3d 927, 930 (9th Cir. 2006) (agency interpretation of its own regulation is "controlling").

The claims alleged by Johnson all fall within one or more of the categories listed in subsection (b).  They were correctly deemed by the district court to be

preempted by HOLA, as applied.  Many courts have reached the same result when examining claims similar to those presented by Johnson.  For example, in *Cosio v. Simental*, No. CV 08-6853 PSG (PLAx), 2009 U.S. Dist. LEXIS 8385, (C.D. Cal. Jan. 27, 2009), the district court found that a plaintiff's claims that defendants convinced plaintiffs to enter into "complicated, risky and oppressive" loans and failed to disclose "the terms, risks and consequences of that type of loan," triggered several provisions of Paragraph (b).  *Id.* at *13–*15.  The court held that "because the claims, as applied, turn on types of state law listed in § 560.2(b), the preemption analysis ends there.  Plaintiffs' … claims are preempted." *Id.* at *15.

Similarly, in *Nava v. Virtual Bank*, No. 2:08-CV-00069-FCD-KJM, 2008 U.S. Dist. LEXIS 72819, (E.D. Cal. July 16, 2008) (Damrell, Jr., J.), the court held that a claim that, like Johnson's, is primarily based on "a failure to properly disclose and represent the true interest rate of the loan and that negative amortization was certain to occur," clearly "implicates § 560.2 (b)(9) since its application would purport to impose requirements on the types of disclosures made by defendants" and was therefore preempted.  *Id.* at *19–*20.  *See also Coppes v. Wachovia Mortg. Corp.*, No. 2:10-cv-01689-GEB-DAD, 2010 U.S. Dist. LEXIS 115865 (E.D. Cal. Oct. 29, 2010) (HOLA preempted claim based on the alleged non-disclosure of an interest rate); *Andrade v. Wachovia Mortgage*, No. 09 CV 0377 JM (WMc), 2009 U.S. Dist. LEXIS 34872 (S.D. Cal. Apr. 21, 2009) ("the

-29-

factual underpinnings of Plaintiff's state law claims fall within HOLA's preemptive scope"); *Ahmad v. World Savings Bank*, No. CIV S-09-520 GEB KJM PS, 2009 U.S. Dist. LEXIS 45210 (E.D. Cal. May 29, 2009); *Lopez v. World Savings & Loan Assn*, 105 Cal. App. 4th 729 (2003) (California state court finding federal law preempted borrower's claims under state law).

In the district court below, Johnson "advanced no theory"—either in his two lengthy opposition documents (SER 171–329 & 060–161), or in his proposed second amended complaint (SER 200–329)—"which overcomes preemption." (SER 008:5-6.)

Similarly on appeal, Johnson has failed to raise any meaningful challenge to the HOLA basis of the district court's ruling. The term appears in a single question in Johnson's brief to which he neither proposes an answer anywhere in his brief nor even analyzes or argues: "Did the District Court err by ruling in its 'Findings and Recommendations' that Plaintiff Lamont Johnson's (FAC" [sic]) First Amended complaint state law claims **are preempted by HOLA**, when Plaintiff presented to the District Court, a copy of the Class action Order from US [sic] District Court Judge Jeremy Fogal [sic] ruling, wherein he had ruled on April 9, 2008 that HOLA Does [sic] not preempt Plaintiff's same state law claims?" AOB 19 [¶ 46] (original emphasis). If this mere question without discussion or

analysis were to sufficiently preserve an issue on appeal, the answer nevertheless resoundingly defeats Johnson's claims.

First, as noted in the Statement of the Case above, Judge Fogel specifically reviewed Johnson's allegations and claims at the outset of the action and the court determined that Johnson's case was not related to *Mandrigues*, the case in which the ruling referred to by Johnson was made. (*See* SER 544 [Dkt. Nos. 5 & 6].) Johnson has not appealed from that order here. And were his claims related (they were deemed not to be), there is no suggestion in the record that Johnson opted-out of the class in any event; the MDL settlement would have thus barred them. *See* Footnote 4, *ante*.

Second, the unpublished order to which Johnson is referring—*Mandrigues v. World Sav., Inc.*, No. 5:07-cv-04497-JF, 2008 U.S. Dist. LEXIS 31810, *6–*8 (N.D. Cal. Apr. 9, 2008) (Fogel, J.)—was specifically flagged *twice* by its author as not citable: "NOT FOR CITATION," *id.* at *1 (original capitalization), and "This disposition is not designated for publication and may not be cited," *id.* at *2 n. 1. This prohibition appears on the face of the copy upon which Johnson seems to rely (but does not cite). (SER 053.) The unpublished, uncitable order therefore neither supports Johnson nor aids this Court's review.

Finally, even if bench and bar could rely on the *Mandrigues* order (and the court expressly instructed that no one do so), its author later reversed course in a

decision made after the unpublished order to which Johnson makes this skeletal reference in his brief.  In *Jones-Boyle v. Washington Mut. Bank, F.A.*, 2010 U.S. Dist. LEXIS 78208 (N.D. Cal. July 7, 2010) (Fogel, J.), the district court expressly found that the same types of claims alleged in Johnson's FAC—claims for violations of the state UCL, breach of contract, and breach of the implied covenant of good faith and fair dealing—were preempted by HOLA.  It determined that these claims affected the "'terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance … or term to maturity of the loan[,]' §560.2(b)(4), as well as the '[d]isclosure[s] and advertising … included in … credit contracts, or other credit-related documents[,]' § 560.2(b)(9)."  *Id.* at *18–*23, citing *Conder v. Home Sav. of Am.*, 680 F. Supp. 2d 1168, 1175 (C.D. Cal. 2009); *Newbeck v. Wash. Mut. Bank*, No. 09-1599, 2010 U.S. Dist. LEXIS 3830, *14 (N.D. Cal. Jan. 19, 2010); *Hava v. U.S. Bancorp.*, No. 09-3855, 2009 U.S. Dist. LEXIS 119857, *24–*25 (N.D. Cal. Dec. 22, 2009); *Carnero v. Weaver*, No. 09-1995, 2009 U.S. Dist. LEXIS 117957, *7–*9 (N.D. Cal. Dec. 18, 2009); *Buick v. World Sav. Bank*, 637 F. Supp. 2d 765, 774 (E.D. Cal. 2008) (UCL claim based on savings association's advertising practices preempted by HOLA).

Therefore, Johnson has offered nothing of substance and zero persuasion to overturn the district court's HOLA ruling.

**C.    The district court properly exercised its discretion in determining that further amendment would be futile after it analyzed Johnson's proposed second amended complaint.**

In response to Wells Fargo's motion to dismiss, and no longer aided by his counsel, Johnson proposed a second amended complaint.  In it, he abandoned all of the prior claims advanced by his former attorney except breach of the implied covenant of good faith and fair dealing.  He replaced the previous claims with new ones to "quiet title" to the York Town Condominium, for "mail fraud," a RICO claim for "conspiracy to commit mail fraud," an alleged violation of the FDCPA, and a claim for "wire fraud."  All of the claims were hitched to Johnson's nonsensical idea that his York Town ELOC was unsecured by the property.  The district court easily unraveled and correctly dispatched this theory:  "Plaintiff asserts that the $140,000 equity line of credit was not properly secured by the York Town property because the note did not reference the particular unit owned by plaintiff. …. The deed of trust, however, referenced an exhibit attached thereto which contained a full property description, including the unit number." (SER 005:21-24, citing SER 394 & SER 303).

The district court carefully analyzed Johnson's proposed second amended complaint (SER 005:19–006:26 n. 2).  It correctly concluded that "Plaintiffs claims are either barred by the statute of limitations or preempted under HOLA. Plaintiff's proposed amended complaint does not cure the deficiencies evident in

the first amended complaint.  It appears that further amendment of the complaint would be futile.  The motion to dismiss should be granted."  (SER 009:6-9.)

In reaching that conclusion, the court also correctly decided that Johnson had failed in his attempt to allege a RICO enterprise or wrongful predicate acts allegedly committed by the defendant:  "Plaintiff's attempt to cast this action as a RICO case is deficient in that the predicate acts of racketeering activity simply do not exist.  The activity underlying plaintiff's claims was a simple loan transaction and foreclosure under a deed of trust.  This is not the kind of unlawful activity contemplated by the Civil RICO Act."  (SER 006:13-17, citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985), 18 U.S.C. § 1961.)

The district court's determination that Wells Fargo was not a "debt collector" for purposes of the FDCPA under the circumstances alleged is also well supported by decisional law.  *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008) ("Furthermore, because 'foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA,' [citation], [plaintiffs] do not plead that [trustee] was 'collecting a debt.'"), citing *Ines v. Countrywide Home Loans*, No. 08cv1267 WQH (NLS), 2008 U.S. Dist. LEXIS 88739, 2008 WL 4791863, *2 (S.D. Cal. Nov. 3, 2008), and *Hulse v. Ocwen Fed. Bank, FSB*, 195 F.Supp.2d 1188, 1204 (D. Or. 2002); *Mansour v. Cal-Western Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1182 (D.

Ariz. 2009) (mortgagees and beneficiaries, including mortgage servicing companies, are not "debt collectors" subject to the FDCPA, and non-judicial foreclosure is not an attempt to collect a "debt" for purposes of the FDCPA); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996) (lender is not a "debt collector" as defined in the FDCPA); *Kloth v. Citibank*, 33 F. Supp. 2d 115, 119 (D. Conn. 1998). *See also Diessner v. Mortgage Elec. Reg. Sys.*, 618 F. Supp. 2d 1184, 1189 (D. Ariz. 2009).

Johnson's assertion that the York Town ELOC was "unsecured" because the York Town Condominium's address appeared in the body of the deed while its specific unit number was in the property legal description exhibit attached to the deed is incompatible with any reasonable application of California law. *See*, *e.g.*, Cal. Civ. Code § 3528 ("The law respects form less than substance."). Even if an incorrect legal description of the York Town Condominium had appeared in the deed of trust and encumbered an entirely *different* condominium unit than Johnson's—exactly the facts in *Clayton Dev. Co., Inc. v. Falvey*, 206 Cal. App. 3d 438 (1988)—the erroneous trust deed would nevertheless constitute a security interest in the property and create an equitable mortgage. *Clayton Dev. Co., Inc.*, *supra*, 206 Cal. App. 3d at 443 ("Clearly the parties intended their deal to be a secured transaction."). *See also Ohanian v. Irwin (In re Irwin)*, No. CIV-F-05-0940 AWI, 2007 U.S. Dist. LEXIS 45848, at *18–*20 (E.D. Cal. June 13, 2007)

-35-

(Ishii, J.), quoting *Jones v. First American Title Ins. Co.*, 107 Cal. App. 4th 381, 383 (2003) ("The court finds the irregularities cited to be inconsequential and highly unlikely to have an effect on the validity of the foreclosure sale. …. Any defects in the sale of the Property could be remedied by minor reformation of the contract.")  Johnson's quiet title, debt collection, and mail and wire fraud theories all hinge on a specious theory which the district court soundly rejected.  (SER 005:23-24.)

The district court also noted that the proposed quiet title action was defective because of Johnson's failure to tender, and the court recognized that tender was required whenever a foreclosure sale is sought to be set aside.  (SER 006:20-26 ["Plaintiff also alleges an additional claim for quiet title in the proposed amended complaint but that claim cannot lie in the absence of tender.  [Citations.]."].)  On appeal, Johnson states with regard to his quiet title theory and failure to tender, "Plaintiff is not facing foreclosure on his Yorktown property therefore tender requirements are not required."  AOB 6 [¶ 42].  His contention is at once fundamentally incompatible with the theories that underpin Johnson's claims, and erroneous as a matter of law. [18]  Johnson is not facing foreclosure because he

---

[18]  "A full tender must be made to set aside a foreclosure sale, based on equitable principles."  *Stebley v. Litton Loan Servicing, LLP*, 202 Cal. App. 4th 522, 526 (2011) (citations omitted).  "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured.  (See a

*[Footnote Text Cont'd on Next Page]*

alleges that foreclosure has already taken place. But this in no way excuses the

tender requirement. A full tender must be made to set aside a foreclosure sale.

*Stebley*, *supra*, 202 Cal. App. 4th at 526 (2011). Johnson's insistence on failing to

tender accords with his approach to the repayment of his loans. (SER 077:7-9

[¶ 30] ["Because Plaintiff was given so much bad customer service from defendant

Wachovia, plaintiff stopped paying on his last remaining mortgage."].)

As to any further amendment that might be proposed by Johnson (although

none is expressly articulated in his brief), the court considers five factors in

assessing the propriety of the court's grant or denial of leave to amend—bad faith,

undue delay, prejudice to the opposing party, futility of amendment, and whether

the plaintiff has previously amended the complaint. *United States ex rel. Lee v.*

---

*[Footnote Text Cont'd from Previous Page]*

long list of cases sustaining the equitable rule as variously applied collated in 10
CAL. JUR., p. 512 *et seq.*) It was clearly erroneous to quiet her title under the
circumstances of her refusal to do equity." *Shimpones v. Stickney*, 219 Cal. 637,
649 (1934); *Gavina v. Smith*, 25 Cal. 2d 501, 505–06 (1944) (quiet title denied
where the party had not fulfilled its contractual obligations); *Abdallah v. United
Sav. Bank*, 43 Cal. App. 4th 1101, 1109 (1996); *Onofrio v. Rice*, 55 Cal. App. 4th
413, 424 (1997) (the borrower must pay, or offer to pay, the secured debt, or at
least all of the delinquencies and costs due for redemption, before commencing the
action); *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal. App. 3d 1018,
1022 (1989) ("The rationale behind the [tender] rule is that if [the borrower] could
not have redeemed the property had the sale procedures been proper, any
irregularities in the sale did not result in damages to the [borrower].") "Simply
put, a complaint that does not allege such a tender does not state a cause of action.
*McElroy v. Chase Manhattan Mortgage Corp.*, 134 Cal. App. 4th 388, 393–394
(2005).

*Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011), citing *Johnson v. Buckley*,
356 F.3d 1067, 1077 (9th Cir. 2004).

The district court did not abuse its discretion in finding such an amendment
would be futile. *Corinthian Colleges*, *supra,* 655 F.3d at 995; *see also Gov't
Computer Sales Inc. v. Dell Mktg.*, 199 Fed. Appx. 636, 639–640 (9th Cir. 2006)
(mem.) (district court properly determined that the allegation of other facts
consistent with the challenged pleading could not possibly cure the deficiency,
after two previous opportunities were given to amend its complaint, and an
additional opportunity would be futile because plaintiff had not alleged any
additional facts or circumstances that gave rise to a claim).

In *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994), the Seventh
Circuit agreed with the lower court's decision that further amendment would be
futile after the plaintiff had had the opportunity to plead a second amended
complaint. "A district court does not abuse its discretion in denying leave to
amend if the proposed repleading would be futile, and futile repleadings include
restating the same facts using different language, reasserting claims previously
determined, failing to state a valid theory of liability, and the inability to survive a
motion to dismiss. *Id.* (internal citations omitted); *see also Miller v. Yokohama
Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004).

"Although a district court 'should freely give leave [to amend] when justice so requires,' Fed. R. Civ. P. 15(a)(2), the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint. [Citation.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. Apr. 3, 2013) (finding no abuse of discretion in denying leave to amend where evidence of bad faith or risk of prejudice was lacking, but undue delay and previous amendments were present along with futility), quoting *Corinthian Colleges*, *supra*, 655 F.3d at 995, and *Yokohama Tire Corp.*, *supra*, 358 F.3d at 622.

On this record and in his brief on appeal, Johnson has failed to offer any reason to disturb the district court's finding of futility.  The court was well within its discretion in making its determination that further pleadings by Johnson would be futile.

### D.    Johnson has presented neither argument nor analysis that meaningfully disputes the district court's order.

Johnson's opening brief has failed to present any meaningful argument or analysis.  It serves neither to reasonably dispute the district court's ruling, nor to adequately preserve any issue for review on appeal.

The Ninth Circuit, like other circuit courts, has repeatedly held that an issue will only be considered on appeal if it has been "specifically and distinctly argued in appellant's opening brief." *Christian Legal Soc'y Chapter of Univ. of Cal. v.*

*Wu*, 626 F.3d, 483, 487–488 (9th Cir. 2010), quoting *Miller v. Fairchild Indus., Inc.*, 797 F.2d, 727, 738 (9th Cir. 1986); *accord Dunkel*, *supra*, 927 F.2d at 956 (7th Cir. 1991) ("a skeletal interior 'argument,' really nothing more than an assertion, does not preserve a claim."). And it is well established that "issues raised in the brief which are not supported by argument are," of course, "deemed abandoned." *Acosta-Huerta v. Estelle*, 7 F.3d, 139, 144 (9th Cir. 1992); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

Johnson throws up 57 issues, rhetorical questions, and conclusory statements in his brief—none of which are sufficiently supported by cogent argument, analytical development, or relevant citation to authority.

For example, he cuts and pastes into the body of his brief an opinion by the California Court of Appeal called *Medeiros v. Medeiros*, 177 Cal. App. 2d 69 (1960). AOB 15–17. But the relevance of this opinion cannot be gleaned because Johnson offers no argument concerning it.

Reading the *Medeiros* opinion itself is of little assistance either. The review involved an appeal from a trial court order granting a new trial to Mary Medeiros, the wife of a decedent named Manuel Medeiros. Mrs. Medeiros brought an action against two parties (a family member named John Medeiros, and the administrator of her husband's estate), seeking to quiet title to her husband's real property and bank account, which she asserted were community property. Over appellants'

-40-

contrary position, the California Court of Appeal sided with Mrs. Medeiros and concluded that she was, in fact, entitled to a trial by jury because her action was at law instead of in equity since she was no longer in possession of the property. *Medeiros*, *supra*, 177 Cal. App. 2d at 73. The trial court's order granting a new trial was thus affirmed. *Id.* The relevance to Johnson's case? He does not say.

Like Johnson has done here, the appellant in *Wang Labs. v. Kagan*, 990 F.2d, 1126 (9th Cir. 1993) asserted error by the district court in granting summary judgment on certain claims. But the appellant thereafter "failed to cite any authority or make any argument for this position." This Court determined, "Thus, [appellant] waived these issues on appeal." *Id.* at 1129; *Seattle Sch. Dist. v. B.S.*, 82 F.3d 1493, 1502 (9th Cir. 1996), citing *Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 923–24 (9th Cir. 1988) ("The [appellant] purports to challenge the award of fees but presents no explanation in support of its contention of error. Accordingly the issue is waived.")

In *Kohler v. Inter-Tel Techs.*, 244 F.3d 1167 (2001), the Ninth Circuit also declined to review an issue asserted in the appellant's "statement of issues" since "her brief contains no arguments in support of that claim." *Kohler*, 244 F.3d 1167, 1182. Likewise, in *Independent Towers of Wash. v. Washington*, 350 F.3d 925, 930 (9th Cir. 2003), the Ninth Circuit declined to review authorities without

argument, stating "[W]e do not address any statute or regulation that was not accompanied by legal argument in [appellant's] opening brief."

The Ninth Circuit has thus consistently refused to address claims that were "bare assertion[s] … with no supporting argument." *Christian Legal Soc'y, supra*, 626 F.3d at 487, quoting *Brownfield v. City of Yakima*, 612 F.3d 1140, 1149 n. 4 (9th Cir. 2010), *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1079 n. 26 (9th Cir. 2008). The Ninth Circuit moreover judiciously warned appealing parties in *Greenwood v. Federal Aviation Admin.*, 28 F.3d 971 (9th Cir. 1994) that "[w]e will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review." *Greenwood*, 28 F.3d at 977.

The Ninth Circuit went on to hold that the appellant's challenge to the constitutionality of the statute was waived due to his failure to present "a specific, cogent, argument for our consideration." *Id.*

Accordingly, Johnson bare assertions without meaningful argument, analysis, or relevant development of authorities do not provide a sufficient basis to disturb the district court's judgment.

-42-

# IX.    CONCLUSION

Based on the foregoing, Defendant-Appellee Wells Fargo respectfully submits that its motion to dismiss was properly granted.  The district court also correctly exercised its discretion in finding that further amendment on this record and any further repleadings by Johnson would be futile.  No reversible error exists under the legal standards correctly applied.  Therefore, the district court's judgment in favor of Wells Fargo and against Johnson should be affirmed on this appeal.

Respectfully submitted,

Dated:  June 28, 2013

ANGLIN FLEWELLING RASMUSSEN
    CAMPBELL & TRYTTEN LLP

By:    s/ *Robert C. Little*
    Robert Collings Little

*Attorneys for Defendant and Appellee*
WELLS FARGO BANK, N.A.,
successor to by merger with
Wells Fargo Bank Southwest, N.A.,
formerly known as Wachovia Mortgage, FSB,
formerly known as World Savings Bank, FSB
*[erroneously named and sued herein as
"Wachovia Bank FSB," "Wachovia Mortgage
Corp," and "Wells Fargo Central Bank"]*

## CERTIFICATE OF COMPLIANCE

(FED. R. APP. P. 32(a); 9TH CIR. R. 32-1)

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 10,598 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using the Microsoft Word 2010 word processing program, a 14-point font size, and the Times New Roman type style.

Respectfully submitted,

Dated:  June 28, 2013

ANGLIN FLEWELLING RASMUSSEN
   CAMPBELL & TRYTTEN LLP

By: _____ s/ *Robert C. Little* _____
         Robert Collings Little

*Attorneys for Defendant and Appellee*
WELLS FARGO BANK, N.A.,
successor to by merger with
Wells Fargo Bank Southwest, N.A.,
formerly known as Wachovia Mortgage, FSB,
formerly known as World Savings Bank, FSB
*[erroneously named and sued herein as
"Wachovia Bank FSB," "Wachovia Mortgage
Corp," and "Wells Fargo Central Bank"]*

-44-

## STATEMENT OF RELATED CASES

(9TH CIR. R. 28-2.6)

Defendant and Appellee Wells Fargo Bank, N.A., successor to by merger with Wells Fargo Bank Southwest, N.A., formerly known as Wachovia Mortgage, FSB, formerly known as World Savings Bank, FSB, erroneously named and sued herein as "Wachovia Bank FSB," "Wachovia Mortgage Corp," and "Wells Fargo Central Bank" (Wells Fargo), states the name and docket number for each related case pending before the Ninth Circuit known to undersigned counsel, and describes its relationship to the case being briefed herein as follows:  to the best of our knowledge, none.

Respectfully submitted,

Dated:  June 28, 2013

ANGLIN FLEWELLING RASMUSSEN
    CAMPBELL & TRYTTEN LLP

By:  ___s/ *Robert C. Little*_____
        Robert Collings Little

*Attorneys for Defendant and Appellee*
WELLS FARGO BANK, N.A.,
successor to by merger with
Wells Fargo Bank Southwest, N.A.,
formerly known as Wachovia Mortgage, FSB,
formerly known as World Savings Bank, FSB
*[erroneously named and sued herein as*
*"Wachovia Bank FSB," "Wachovia Mortgage*
*Corp," and "Wells Fargo Central Bank"]*

-45-

# CERTIFICATE OF SERVICE

(FED. R. APP. P. 25; 9TH CIR. R. 25-5(f))

I hereby certify that I electronically filed the following documents with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on June 28, 2013:

## APPELLEE WELLS FARGO'S ANSWERING BRIEF

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that one of the participants in the case is not a registered CM/ECF user. I have dispatched the documents to a third party commercial carrier (Norco Delivery Services) for overnight delivery to the non-CM/ECF participant:

*Pro Se Plaintiff-Appellant*

Lamont Johnson
2001 Club Center Drive, Box 8122
Sacramento, California  95835-1410
(916) 849-3293

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. This declaration is executed in Pasadena, in the County of Los Angeles, State of California.

Dated:  June 28, 2013                    s/ *Tracy M. Vena*
                                          Tracy M. Vena